2016 IL App (1st) 150947

SIXTH DIVISION
December 23, 2016

No. 1-15-0947

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10 CR 15617 |
| PETER PAPALEO, | ) ) ) | Honorable Colleen Ann Hyland, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE DELORT delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**OPINION**

¶1      Defendant Peter Papaleo appeals from the first stage dismissal of his petition for relief under the Post-Conviction Hearing Act. 725 ILCS 5/122-1 *et seq.* (West 2012).  On appeal, defendant contends that his petition stated the gist of a claim for ineffective assistance of appellate counsel.  We affirm.

¶2                                    BACKGROUND

¶3      On April 27, 2007, the State commenced two separate special grand jury proceedings through which it sought true bills of indictment against defendant for numerous sex offenses that he allegedly committed against his daughter, G.G.  The State presented testimony from Detective Rita Mendez during both proceedings.

¶4 During the first grand jury proceeding (special grand jury (SGJ) No. 2589), Detective Mendez testified that she was assigned to investigate an allegation of sexual assault committed against G.G. She "learn[ed]" that: (1) defendant was G.G.'s biological father, (2) defendant was born in 1963, and (3) G.G. was born in 2000. In addition, she learned that defendant "inserted his penis into [G.G.'s] mouth" on March 16, 2007. Furthermore, she testified that defendant made a written statement admitting that he put his penis in G.G.'s mouth on two occasions. The grand jury returned a true bill of indictment, leading to the initiation of case No. 07 CR 9559.

¶5 During the second grand jury proceeding (SGJ No. 2590), Detective Mendez testified that she "learn[ed]" that defendant rubbed his penis against G.G. buttocks and inserted his penis into G.G.'s mouth, vagina, and anus. She also "learn[ed]" that G.G complained of pain in her rectum and blood in her urine. In addition, the prosecutor asked Detective Mendez, "[d]id you learn that a medical examination revealed trauma to [G.G.'s] vagina, a torn hymen, vaginal infection, and a cyst in her vaginal canal." Detective Mendez responded, "[y]es." Detective Mendez also stated that defendant made a written statement admitting that he placed his penis in G.G.'s mouth on two occasions. After this testimony, the grand jury returned a true bill of indictment, leading to the initiation of case No. 07 CR 9560.

¶6 On May 3, 2010, defendant filed a motion to suppress in case No. 07 CR 9559 and case No. 07 CR 9560. In addition, defendant filed a motion to dismiss in case No. 07 CR 9560. The record does not contain a copy of the motion to dismiss. However, in a subsequent motion to dismiss which is contained in the record, defendant explained that his original May 3, 2010 motion to dismiss was "based on misrepresentations made to the Grand Jury by the State and their witness, Detective Mendez."

¶7     Defendant's motion to suppress and motion to dismiss were scheduled to be heard on August 2, 2010.  On that day, however, Detective Mendez was unavailable.  The court heard testimony from a police officer regarding the motion to suppress and continued the motion to suppress and the motion to dismiss case No. 07 CR 9560 to August 30, 2010.

¶8     On August 27, 2010, the State again convened a grand jury.  The State sought an indictment against defendant for criminal sexual assault against G.G.  The prosecutor explicitly noted, "[t]his is a reindictment of Case Nos. 07[ ]CR-9559 and 07[ ]CR-9560" and explained that the purpose of the reindictment was "to correct the record."  The State then presented testimony from Cook County sheriff's police department detective Cameron Pon.

¶9     Detective Pon testified he was assigned to investigate a sexual assault that defendant allegedly committed against G.G between January 1, 2005 and March 31, 2007.  During the course of the investigation, he learned that defendant was G.G.'s father and that during the relevant time period, G.G. was under age 13 and defendant was over age 17.  In addition, Detective Pon testified that his investigation revealed that during the relevant time period, defendant made contact with his penis on G.G.'s vagina, anus, mouth, and buttocks.  Detective Pon noted that defendant produced a written statement admitting that he made contact with his penis on G.G.'s buttocks.  The State did not elicit any testimony from Detective Pon regarding G.G.'s hymen.  The grand jury returned an indictment charging defendant with four counts of predatory criminal sexual assault.  720 ILCS 5/12-14.1(a)(1) (West 2010).  The 2010 indictment generated criminal case No. 10 CR 15617.

¶10    On August 30, 2010, the court held a pre-trial hearing on case No. 10 CR 15617.  The prosecutor indicated that the State intended to nol-pros the 2007 indictments once it obtained a

transcript of the 2010 grand jury proceeding. The record does not indicate when (or if) the State nol-prossed the 2007 indictments.

¶11 On September 17, 2010, defendant filed a motion to dismiss the 2010 indictment. Defendant stated that he was indicted for sexually assaulting G.G. in 2007 in case Nos. 07 CR 9559 and 9560 and that at the time of his reindictment in 2010, there was a pending motion to dismiss in case No. 07 CR 9560 that he had filed and upon which the trial court had yet to rule. According to defendant, the 2007 motion was based on a claim that Detective Mendez's testimony that G.G.'s medical examination revealed a torn hymen was false. Defendant argued that the State was aware of the alleged misrepresentation and secured the 2010 indictment "to circumvent [his] due process rights" and "stop [him] from proceeding and prevailing on his Motion to Dismiss."

¶12 At the hearing on defendant's motion to dismiss the 2010 indictment, the State called Detective Mendez as its only witness. Detective Mendez admitted that when she testified before the grand jury in April 2007, she did not know whether G.G. suffered a torn hymen. She believed, nonetheless, that her grand jury testimony was otherwise accurate. The State then asked Detective Mendez whether she "intentionally lie[d] to the Grand Jury about [G.G.'s] injuries so *** [she] could receive an indictment ***?" Detective Mendez answered "no." On cross-examination, Detective Mendez acknowledged that during the April 2007 grand jury, she answered "yes" when asked by the State whether G.G. suffered a torn hymen.

¶13 The court found that Detective Mendez made "a misrepresentation before the Grand Jury when she agreed that there was a torn hymen." However, the court found that the misrepresentation was not "intentional," "knowing," or "sinister," based on Detective Mendez's "flippant, cavalier demeanor." The court expressed doubt as to whether Detective Mendez was

"bright enough to have intentionally misled a Grand Jury" and explained Detective Mendez "thinks it's apparently okay to just say yes to whatever questions are asked of her."

¶14     Continuing, the court, citing *People v. Oliver*, 368 Ill. App. 3d 690 (2006), noted that to obtain dismissal of an indictment as a result of a due process violation, a defendant must show that the violation caused "substantial prejudice." The court found that defendant made "absolutely no showing of prejudice" because physical injury (such as a torn hymen) is not an element of sexual assault, and the State had sufficient evidence to reindict defendant without Detective Mendez's testimony. The court then denied defendant's motion to dismiss.

¶15     The case then proceeded to a jury trial. The jury found defendant guilty, and the court sentenced defendant to 50 years' imprisonment and 20 years of mandatory supervised release (MSR). On direct appeal, defendant argued only that his MSR term should have been an indeterminate term of three years to life. The State conceded error, and this court ordered defendant's mittimus be corrected to reflect that his MSR term was an indeterminate period of three years to life. *People v. Papaleo*, 2013 IL App (1st) 120947-U (unpublished order under Supreme Court Rule 23).

¶16     On February 21, 2014, defendant filed a *pro se* postconviction petition. Defendant alleged, among other things, that appellate counsel rendered ineffective assistance by failing to argue trial counsel's ineffective assistance for not preventing the State from nol-prossing the 2007 indictments before the court ruled on defendant's motion to dismiss case No. 07 CR 9560. The trial court dismissed the postconviction petition as frivolous and patently without merit. The defendant filed a motion to reconsider, which was denied. This appeal followed.

¶17                                    ANALYSIS

¶18     On appeal, defendant contends that the trial court erred by summarily dismissing his *pro se* postconviction petition.  "The Post-Conviction Hearing Act [(725 ILCS 5/122-1 *et seq.* (West 2012)) (Act)] provides a procedural mechanism through which a criminal defendant can assert that his federal or state constitutional rights were substantially violated in his original trial or sentencing hearing."  *People v. Davis*, 2014 IL 115595, ¶ 13.  A proceeding initiated pursuant the Act is "not a substitute for a direct appeal, but rather is a collateral attack on a prior conviction and sentence."  *Id.*  The Act allows inquiry into constitutional issues arising in the original proceeding which have not been raised and could not have been adjudicated on direct appeal.  *Id.*  Issues raised and decided on direct appeal are therefore barred by the doctrine of *res judicata*, and issues that could have been raised on direct appeal are forfeited. *Id.*

¶19     Proceedings under the Act are divided into three stages.  *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006).  This appeal relates only to the first stage.  "At the first stage, the circuit court must, within 90 days of the petition's filing, independently review the petition, taking the allegations as true, and determine whether 'the petition is frivolous or is patently without merit.' "  *People v. Hodges*, 234 Ill. 2d 1, 10 (2009) (quoting *People v. Edwards*, 197 Ill. 2d 239, 244 (2001)); 725 ILCS 5/122-2.1(a)(2) (West 2014).  A petition is frivolous or patently without merit "only if the petition has no arguable basis *** in law or in fact."  *Hodges*, 234 Ill. 2d at 11-12.  A petition lacks an arguable basis in law or fact if it "is based on an indisputably meritless legal theory or a fanciful factual allegation."  *Id*. at 16.  A legal theory is "indisputably meritless" if it is "completely contradicted by the record," and a factual allegation is "fanciful" if it is "fantastic or delusional."  *Id*. at 16-17.

¶20    Defendant contends that his postconviction petition stated the gist of a constitutional claim by alleging that appellate counsel rendered ineffective assistance by failing to argue that under *People v. Woolsey*, 139 Ill. 2d 157 (1990), the trial court violated his due process rights when it allowed the State to nol-pros the 2007 indictments before resolving his motion to dismiss case No. 07 CR 9560.  As we noted above, the record does not actually disclose when, or even if, the State in fact *nol-prossed* the 2007 indictments.  That is a curious omission, since defendant's argument hinges in large part on the alleged fact that the State *nol-prossed* the 2007 indictments before the court ruled on his motion to dismiss those indictments.  But the State has not objected to this omission, so we will assume that the State did in fact nol-pros the 2007 indictments.

¶21    Claims of ineffective assistance of appellate counsel are governed by the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Griffin*, 178 Ill. 2d 65, 74 (1997).  To show ineffective assistance under *Strickland*, a defendant must show that (1) counsel's performance was deficient and (2) the deficient representation was prejudicial.  *Strickland*, 466 U.S at 688; *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010).  To satisfy the performance prong, a defendant must show that counsel's representation was "objectively unreasonable."  *Petrenko*, 237 Ill. 2d at 496.  To establish prejudice, the defendant must show that, " 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' "  *Id*. at 496-97 (quoting *Strickland*, 466 U.S. at 694).  A similar test applies to a claim of ineffective assistance of appellate counsel: the defendant "must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful."  *Id*. at 497.  "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong."

*People v. Simms*, 192 Ill. 2d 348, 362 (2000). "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17.

¶22 Defendant argues that he stated the gist of a constitutional claim by alleging that his appellate counsel was ineffective for failing to argue that, under *Woolsey*, the trial court was "required" to rule on his motion to dismiss the case No. 07 CR 9560 indictment before it permitted the State to nol-pros the 2007 indictments. In *Woolsey*, the defendant was indicted for murder and released on bond. *Woolsey*, 139 Ill. 2d at 160. The defendant filed a speedy trial demand on August 31, 1987. *Id.* On December 14, 1987, the State nol-prossed the charges and recharged defendant by information. *Id.* The defendant filed a new speedy trial demand on December 16, 1987, and on June 21, 1988, he filed a motion to dismiss alleging that his right to a speedy trial had been violated. *Id.* On June 30, 1988, the State moved for a *nolle prosequi*. *Id.* Defendant objected, arguing that the court should rule on his motion to dismiss before entertaining the State's motion. *Id.* Over defendant's objection, the court granted the State's motion. *Id.* at 160-61. This court dismissed the appeal, as the *nolle prosequi* order was not a final order. *Id.* at 161.

¶23 On further review, our supreme court affirmed the dismissal but found the that trial court erred in not considering defendant's motion to dismiss before allowing the state to nol-pros the case. Pursuant to its supervisory powers, the supreme court vacated the trial court's order and remanded for a hearing on the defendant's motion to dismiss. The court explained that in reaching its decision, it was "guided" by *Gibellina v. Handley*, 127 Ill. 2d 122 (1989), wherein the court held that, "when there is a motion, potentially dispositive of the case, before the court

prior to the filing of a motion to voluntarily dismiss, the trial court should consider and decide that motion before allowing the motion to voluntarily dismiss an action." *Woolsey*, 139 Ill. 2d at 170.

¶24 This passage from *Woolsey* exposes the central flaw in defendant's argument. The court in *Woolsey* did not announce a blanket requirement that the trial court must *always* consider dispositive defense motions before permitting the State to voluntarily dismiss an indictment. Quite the opposite. *Woolsey* says only that courts "should" consider dispositive defense motions before allowing a voluntary dismissal—that, and nothing more.

¶25 Defendant's argument rests on weaker ground still. Less than a year after *Woolsey* was handed down, the Illinois Supreme Court explained that its statement in *Woolsey* that trial courts should consider dispositive defense motions before allowing a voluntary dismissal was "merely *dicta*." *Bochantin v. Petroff*, 145 Ill. 2d 1, 7 (1991). In *Bochantin*, the court, after discussing the portion of the *Woolsey* opinion upon which defendant relies here, stated: "Contrary to this court's statement in *Woolsey*, which we recognize as merely *dicta*, we emphasize herein that the *Gibellina* opinion left within the discretion of the trial court the decision to consider a potentially dispositive defense motion before granting a plaintiff's section 2-1009 motion." *Id.*

¶26 To survive dismissal at the first stage, defendant must show that it is "arguable" that appellate counsel performed "below an objective standard of reasonableness." (Internal quotation marks omitted.) *Hodges*, 234 Ill. 2d at 17. Defendant cannot satisfy this minimal threshold. A reasonable attorney surveying the supreme court's opinion in *Woolsey* would recognize that, contrary to defendant's argument, the court did not announce a rule "requir[ing]" that the trial court always dispose of a potentially dispositive defense motion before allowing voluntary dismissal. Moreover, a reasonable attorney confronted with the supreme court's opinion in

*Bochantin* would recognize that the court's statement in *Woolsey* which defendant relies upon was "merely dicta" and thus not a controlling rule of law. Under these circumstances, it is not "arguable" that appellate counsel acted unreasonably by failing to argue that the trial court erred by failing to consider defendant's motion to dismiss case No. 07 CR 9560 before permitting the State to nol-pros the 2007 indictments.

¶27     Nor is it arguable that defendant was prejudiced by his appellate counsel's allegedly deficient representation. Notably, in *Woolsey*, the supreme court did not find that the defendant's indictment should have been dismissed with prejudice. It merely remanded the case for a hearing on the defendant's speedy trial motion. *Woolsey*, 139 Ill. 2d at 170-71. Defendant's postconviction petition does not ask for a similar remand. Instead, it requests that the trial court dismiss the case with prejudice based solely on Detective Mendez's testimony.

¶28     Thus, to determine whether defendant was prejudiced by appellate counsel's allegedly deficient representation, we must determine whether it is arguable that, but for counsel's alleged errors, this court would have found that Detective Mendez's testimony constituted such a severe violation of defendant's due process rights that case No. 07 CR 9560 must have been dismissed with prejudice. *Petrenko*, 237 Ill. 2d at 497; *cf. People v. Bew*, 228 Ill. 2d 122, 128-29 (2008) (to show that outcome at trial would have been different had trial counsel filed a motion to suppress, the defendant must show that the trial court would have granted the motion if it had been filed); *People v. Luna*, 2013 IL App (1st) 072253, ¶ 88 (to show prejudice due to trial counsel's failure to request a *Frye* hearing[1], the defendant must show (1) that there is reasonable probability that the court would have granted the motion and (2) the outcome at trial would have been different if the court excluded evidence as a result of the hearing).

---

[1]  See *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923).

¶29     To win dismissal of an indictment on the basis that it was obtained as a result of prosecutorial misconduct, the "defendant must *** show that the prosecutors prevented the grand jury from returning a meaningful indictment by misleading *** it." *People v. DiVincenzo*, 183 Ill. 2d 239, 258 (1998).  The alleged misconduct "must rise to the level of a deprivation of due process or a miscarriage of justice." *Id*. at 257.  A due process violation will be found where the prosecutor "deliberately or intentionally misleads the grand jury, uses known perjured or false testimony, or presents other deceptive or inaccurate evidence." *Id*.  To permit dismissal, the defendant must show that the deprivation was "unequivocally clear" and caused "actual and substantial" prejudice. *People v. Oliver*, 368 Ill. App. 3d 690, 694-95 (2006).  "[A] due process violation consisting of prosecutorial misconduct before a grand jury is actually and substantially prejudicial only if without it the grand jury would not have indicted the defendant." *Id*. at 696-97.  If the State's evidence "was so weak that the misconduct induced the grand jury to indict, prejudice is shown." *Id.* at 697.

¶30     It is clear from the record that, had appellate counsel raised this issue on direct appeal, this court would have found that defendant was not prejudiced by the trial court's decision to allow the State to nol-pros the 2007 indictment before ruling on his motion to dismiss the case No. 07 CR 9560 indictment.  A grand jury may indict a person accused of a crime "only if it determines that there is probable cause for believing that he or she has committed an offense." *People v. Rodgers*, 92 Ill. 2d 283, 288 (1982).  For an indictment to withstand scrutiny, the State must present the grand jury with "some evidence relative to the charge." *Id*. at 290.  " 'Some evidence' does not mean that the State must present the grand jury with evidence as to each element of the offense, but rather means that the evidence submitted must be such that it 'tends

to connect' the defendant to the crime." *People v. Williams*, 383 Ill. App. 3d 596, 631 (2008) (quoting *Rodgers*, 92 Ill. 2d at 290).

¶31    Even excluding Detective Mendez's false testimony regarding G.G.'s allegedly torn hymen, the record shows that the State presented the grand jury with ample evidence to produce an indictment. During the first 2007 grand jury proceeding, SGJ No. 2589, the State presented evidence reflecting that (1) defendant was G.G.'s biological father, (2) defendant was born in 1963, and (3) G.G. was born in 2000. During the second grand jury proceeding, SGJ No. 2590 (the proceeding which generated case No. 07 CR 9560 and which involved Detective Mendez's false testimony regarding G.G.'s hymen), the State elicited testimony from Detective Mendez to the effect that, between January 2005 and March 2007, defendant inserted his penis into G.G.'s mouth, anus, and vagina, and rubbed his penis on his buttocks. In addition, Detective Mendez also informed the grand jury that she learned that G.G. had complained of pain in her rectum and blood in her urine.

¶32    This combined testimony was more than sufficient to sustain an indictment for predatory criminal sexual assault in SGJ No. 2590, even excluding Detective Mendez's testimony regarding the torn hymen. See 720 ILCS 5/12-14.1(a)(1) (West 2010) ("The accused commits predatory criminal sexual assault of a child if: (1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed ***."). Moreover, although the prosecutor was not required to present evidence regarding every element of defendant's offense, it is worth noting that evidence that G.G. sustained a physical injury such as a torn hymen was entirely superfluous to defendant's crime because the subsection of the statute pursuant to which was indicted and conviction, subsection 14.1(a)(1), does not require the State to prove that the victim sustained a physical injury.

Compare 720 ILCS 5/12-14.1(a)(1) (West 2010) (proof of physical injury not an element of the crime) with 720 ILCS 5/12-14.1(a)(2) (West 2010) (requiring the State to prove that the defendant committed an act of sexual penetration which "caused great bodily harm to the victim").

¶33    Since the State produced enough evidence to indict defendant even without Detective Mendez's false testimony and because the testimony regarding G.G.'s hymen was superfluous to the actual elements of the crime charged, defendant cannot show that the false testimony prejudiced him for purposes of his due process claim. *Oliver*, 368 Ill. App. 3d at 696-97. And, since his due process claim lacks even superficial legal merit, defendant cannot show that he was arguably prejudiced by appellate counsel's failure to raise this issue on direct appeal. *Petrenko*, 237 Ill. 2d at 497; *Hodges*, 234 Ill. 2d at 17; *Simms*, 192 Ill. 2d at 362. As a result, we find that the trial court did not err by dismissing defendant's postconviction petition at the first stage.

¶34                                    CONCLUSION

¶35    Based on the foregoing, we affirm the judgment of the trial court.

¶36    Affirmed.