2020 IL App (1st) 171023-U

No. 1-17-1023

Order filed December 30, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 23253 |
| | ) | |
| ISAAC PEREZ, | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The summary dismissal of defendant's *pro se* postconviction petition is affirmed over his contention that the circuit court erred dismissing the petition because he raised an arguable claim of ineffective assistance of appellate counsel.

¶ 2    Defendant Isaac Perez appeals from the summary dismissal of his *pro se* petition for postconviction relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et. seq.* (West 2016)). On appeal, defendant contends that the circuit court erred in summarily dismissing his petition because he made an arguable claim of ineffective assistance of appellate counsel based

on counsel's failure to challenge, on direct appeal, the denial of his pretrial motion to suppress the witnesses' testimony regarding their lineup identifications of defendant as the offender. For the following reasons, we affirm.

¶ 3     Following a 2011 jury trial, defendant was convicted of two counts of armed robbery (720 ILCS 5/18-2 (West 2008)) and sentenced to mandatory life imprisonment as a habitual offender. We affirmed on direct appeal over defendant's contention that the trial court erred in admitting other-crimes evidence and that the habitual criminal provision under which he was sentenced was unconstitutional as applied to him. *People v. Perez*, 2016 IL App (1st) 131303-U. Because we have previously discussed this case in detail on direct appeal, we recount the facts here only as necessary.

¶ 4     The record shows that prior to trial, defendant filed a motion to suppress the lineup identifications of Elizabeth Gonzalez and Tanairi Colon. Defendant argued that the composition of the lineup, and the conduct of the police and bystanders, improperly suggested the identification of the accused. He also argued that the witnesses were allowed to make their identifications in the presence of each other. Defendant requested that the court suppress any improper pre-trial identifications. He also argued that the in-court identifications be suppressed that were the product of the improper pre-trial identifications.

¶ 5     At the hearing, defendant called three witnesses. Gonzalez testified that on November 8, 2008, she was a witness to an armed robbery at a McDonald's restaurant. After being contacted by police, Gonzalez went to a police station on November 22, 2008, to view a physical lineup. She drove to the police station with Colon, her sister, and they were separated by the police upon introducing themselves. The police told her that the offender may or may not be included in the

lineup. Gonzalez was escorted to a room with a curtain, and an officer told her that "there [was] a lineup, and [it was] possible that the person would be there, not be there, and [Gonzalez] had to pick from the lineup." When the curtain was pulled back, Gonzalez saw "some males standing" and "immediately recognized" defendant as the one who "victimized" her. Gonzalez was shown a photograph of the lineup with five men sitting, which she identified as being a fair and accurate depiction of how the men looked during the physical lineup. She made the identification when "they [(the men)] were seated." On cross-examination, Gonzalez stated she identified defendant in the lineup as the one who robbed her at knife point on November 8, 2008. Gonzalez also identified defendant in court. She denied that other witnesses or members of the Chicago Police Department, including Detective Bruce Kischner, told her who to identify in the lineup.

¶ 6   Colon testified that she went to the police station after Gonzalez spoke with her about going to view a lineup. After arriving at the station, Colon was first seated and then individually escorted to a viewing room. Inside the viewing room was an officer from the police department. Colon could not remember if police told her the offender was present in the lineup. She viewed the physical lineup for about five minutes before identifying one of the men. She stated the men in the lineup were standing. On cross-examination, Colon explained that no one from the police department or other witnesses told her who to pick from the lineup. She recognized defendant in the lineup as the man that robbed her on November 8, 2008, and identified him in court.

¶ 7   Kischner testified that on November 22, 2008, he called Gonzalez to come to the police station to view a lineup. When Gonzalez arrived at the station, Colon was with her. Kischner did not know if any other witnesses were waiting in the hallway with Gonzalez and Colon when they arrived. Kischner explained the lineup procedure to Gonzalez and informed her he could not tell

her if there were any suspects in this case. He did not tell Gonzalez that he had a suspect in custody. He instructed her to view the lineup and tell him if anyone looked familiar, and, if so, how she was familiar with person. Gonzalez immediately picked defendant out the lineup. The men were seated during the lineup. Then Colon viewed the same physical lineup, and Kischner gave Colon the same instructions he gave Gonzalez. Kischner explained that Colon took a bit longer to identify a suspect, and each of the men, one at a time, approached the viewing window. Gonzalez did not have an opportunity to speak to Colon before Colon viewed the lineup. He explained that civilians who had viewed the lineup were separated from civilians who had not yet viewed the lineup. Kischner stated that when constructing the lineup with "fillers" he looked for other individuals with the same characteristics as defendant, specifically noting "[m]ale Hispanics, approximately the same age, same weight, [and] same height."

¶ 8    In denying defendant's motion, the court found that the lineup was not suggestive. The court noted all the men were "about the same complexion," all appear "to be about the same age," and that although defendant was the tallest, Gonzalez's immediate identification showed "no indication *** that she even looked at the others." The court also noted that the procedure, and lineup was not otherwise suggestive.

¶ 9    At trial, Gonzalez testified that on November 8, 2008, she was with Colon and Weserlao Cruz at a McDonald's restaurant on North Avenue and Kedzie Avenue. There, she noticed a person, who did not have any food, sitting at a table looking towards her area. Gonzalez identified that man in court as defendant. Gonzalez exited the McDonald's restaurant and got in her car with Colon and Cruz. As she was about to close the door to her car, defendant came "storming up and put a knife in the side of [her] face." Gonzalez dropped her keys and proceeded to quickly honk

the horn and shout for help. Defendant said, "[d]on't move or I'll kill you," and he moved the knife from her head to her side. Defendant demanded jewelry from each of them. Colon and Cruz handed Gonzalez jewelry, which she gave to defendant along with her own necklace. Defendant demanded the car keys, which Gonzalez picked up from the car floor and threw outside the car. Defendant kicked the keys under the car and fled.

¶ 10     On November 22, 2008, Gonzalez went to the police station where she viewed a lineup. She recognized defendant as the person who robbed her "as soon as [she] stepped up" to the lineup. During trial, Gonzalez was shown a video from the McDonald's restaurant and identified Colon, Cruz, and herself. She also identified defendant in a mustard colored hoody and jacket.

¶ 11     On cross-examination, Gonzalez stated the police arrived on the scene a short time after the robbery. At the time, she told officers the robber was a male Hispanic that weighed 170 pounds with brown eyes and brown hair. Gonzalez did not tell the officers about a tattoo. She did not speak about the robbery with Colon during the drive to the station on November 22, 2008. Gonzalez identified defendant as the robber by his face.

¶ 12     Colon testified that on November 8, 2008, she was at a McDonald's restaurant with Gonzalez and Cruz. There, she noticed a man sitting at a table with no food, "just looking around." She identified the man in court as defendant. Colon, Cruz, and Gonzalez exited the restaurant and returned to their car. Before Gonzalez could close the driver's door, defendant pulled it open, displayed a steak knife and placed it against Gonzalez's left torso area. Defendant demanded jewelry from the occupants of the car. Colon and Cruz gave Gonzalez their jewelry, and Gonzalez gave it to defendant. Defendant asked for the car keys, and Colon heard the keys drop to the floor. She then "heard a kick" and saw defendant run away.

¶ 13    On cross-examination, she stated she was sitting in the back seat and had a side view of defendant. She spoke with officers about four minutes after the robbery and told them defendant was a Hispanic male but did not remember describing his height, weight, hair color, or age. Colon remembered telling the officers about a teardrop tattoo near defendant's the left eye. Prior to Colon viewing the lineup on November 8, 2008, she sat with Gonzalez, who drove her to the police station. Colon's identification of defendant took five minutes.

¶ 14    Cruz testified that he was present during the robbery on November 8, 2008, with Colon and Gonzalez. Cruz saw a man holding a knife near Gonzalez's left torso area. Cruz handed a bracelet to Gonzalez, who gave several items, including her car keys, to the man. The man then ran away. Cruz did not clearly see the offender's face and did not identify him.

¶ 15    Canusco Figueroa testified, through a Spanish interpreter, and provided evidence of another offense for the purpose of identification. On October 28, 2008, about 12:15 p.m. she was taking her son to her mother's home on the 1900 block of North St. Louis Avenue. Defendant approached Figueroa while she was standing at the door of her mother's home. She identified defendant in court. Defendant asked Figueroa questions about who lived at the house and then displayed a knife. Defendant demanded all of Figueroa's money and her necklace, which she gave to him. Defendant then fled. On November 22, 2008, Figueroa was called to the police station to view a lineup. She identified defendant as the man who robbed her. On cross-examination, she testified that she did not remember if, on the date of the robbery, she told responding officers the robber's height, weight, or age. She remembered telling an officer the robber was thin. When she was contacted by police to come in on November 22, 2008, she was told the officers had apprehended a person, who matched the description that she gave them.

¶ 16    Kischner testified that on November 22, 2008, he presented Colon and Gonzalez with a lineup. He explained the lineup procedure to each witness, and told them, "I can't tell you if anyone is in custody. I can't tell you if we have a suspect. I can't tell you anything. But if you recognize anybody from anywhere, please let me know from where." Gonzalez immediately identified defendant as the person who robbed her. Colon likewise identified defendant. On cross-examination, Kischner stated that in selecting the lineup participants he chose men who matched defendant physically. Kischner knew defendant was a suspect and was in the room with Colon and Gonzalez when they each individually identified defendant as the robber. It took Colon a couple minutes before she identified defendant, who was approximately 5'11" and weighed 207 pounds.

¶ 17    Chicago Police Officer Kimberly Oppedisano testified that on November 22, 2008, she filled out the arrest report for defendant. The report included defendant's height and weight. On cross-examination, Oppedisano testified defendant did not have a teardrop tattoo on his face at the time of the arrest. The State rested.

¶ 18    Defendant called Chicago Police Detective Robert Carrillo to testify. Carrillo interviewed Figueroa after her robbery. Figueroa told Carrillo the offender's height was 5'9'' and his weight was 150 pounds.

¶ 19    The parties stipulated that, if called, Chicago Police Officer Michael Sanchez would testify that he met with Gonzalez, Cruz, and Colon on  November 8, 2008, and they gave the following description of the offender: 5'10", 30 years old, 170 pounds, brown hair, brown eyes, medium complexion, and a teardrop tattoo near the left eye.

¶ 20    During deliberations, the jury asked to see the video, and was given access to it. The jury returned a verdict finding defendant guilty of armed robbery. Defendant was sentenced to a

mandatory natural life sentence as a habitual offender, based on his Class X convictions for armed robbery in 1997 and 2006.

¶ 21    On direct appeal, this court affirmed defendant's conviction and sentence over his arguments that the trial court erred in admitting evidence of the armed robbery of Figueroa, and that the habitual criminal provision under which he was sentenced violated the proportionate penalties clause of the Illinois Constitution and the Eighth Amendment of the United States Constitution, as applied to him. *Perez*, 2016 IL App (1st) 131303-U, ¶ 26.

¶ 22    On January 10, 2017, defendant filed a *pro se* post-conviction petition under the Act. In the petition, defendant argued, in relevant part, that his appellate counsel was ineffective for failing to raise on appeal that the trial court erred in denying his motion to suppress identification. Specifically, defendant alleged that the line-up was impermissibly suggestive where he had a "stark difference in height" from the other four participants in the lineup, and two of the participants had distinctively longer hair. Defendant further argued that it was error not to raise this issue on appeal because Gonzalez and Colon's identification lacked an independent basis of reliability.

¶ 23    On March 17, 2017, the circuit court in a written order summarily dismissed the petition, finding that the claims were frivolous and without merit. The court pointed out that the lineup participants were seated so disparities in height were negligible and three participants had similar hairstyles to defendant. The court noted the "[r]elatively minor differences in appearance of which defendant complain[ed did] not make the lineup suggestive." Furthermore, the court noted that no other features of the lineup made it suggestive and found that the claim was meritless. Accordingly,

the court concluded that appellate counsel was not deficient for failing to raise the issue on direct appeal.

¶ 24    In this appeal, defendant contends that he sufficiently alleged the gist of a constitutional claim of ineffective assistance of appellate counsel, based on counsel's failure to challenge the denial of his motion to suppress identification testimony where the lineup was improperly suggestive because of differences in defendant's height, size, hair, tattoos, and clothes compared to the other lineup participants.

¶ 25    The Act provides a mechanism by which a criminal defendant may challenge his conviction because of a substantial denial of his constitutional rights. *People v. English*, 2013 IL 112890, ¶ 21. The proceedings begin when a defendant files a petition in the trial court where the original proceedings took place. *People v. Delton*, 227 Ill. 2d 247, 253 (2008). The Act requires that a defendant describe how his constitutional rights were violated and attach affidavits, records or other evidence supporting those allegations or explain their absence. 725 ILCS 5/122-2 (West 2016); *People v. Rogers*, 197 Ill. 2d 216, 221 (2001).

¶ 26    The Act establishes a three-stage adjudication process. *English*, 2013 IL 112890, ¶ 23. A case may only be dismissed in the first stage if it is "frivolous" or "patently without merit." 725 ILCS 5/122-2.1 (West 2014); accord *People v. Harris*, 224 Ill. 2d 115, 125-26 (2007). Defendant need only set forth the "gist" of a constitutional claim. *People v. Collins*, 202 Ill. 2d 59, 66 (2002). A petition is frivolous or patently without merit if it "has no arguable basis in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). In determining the sufficiency of a petition, all well-pled allegations are taken to be true unless contradicted by the record. *People v. Coleman*, 183 Ill.

2d 366, 380-81 (1999). A summary dismissal of a postconviction petition is reviewed *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 27    To prevail on a claim of ineffective assistance of counsel, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland v. Washington*, 466 U.S. 688, 694 (1984)). The *Strickland* standard applies equally to claims of ineffective assistance of appellate counsel and a defendant raising such a claim " 'must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful.' " *People v. Papaleo*, 2016 IL App (1st) 150947, ¶ 21 (quoting *People v. Petrenko*, 237 Ill. 2d 490, 497 (2010)). At the first stage of postconviction proceedings, a petition alleging ineffective assistance of appellate counsel may not be summarily dismissed if: (1) it is arguable that counsel's performance was deficient; and (2) it is arguable that the appeal would have been successful. *Papaleo*, 2016 IL App (1st) 150947, ¶ 21; *People v. Tate*, 2012 IL 112214, ¶¶ 19-20.

¶ 28    It is well-settled that appellate counsel is not obligated to brief every conceivable issue on appeal, and " 'it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong.' " *Papaleo*, 2016 IL App (1st) 150947, ¶ 21 (quoting *People v. Simms*, 192 Ill. 2d 348, 362 (2000)). "In order to show prejudice, the defendant must show that the underlying issue had merit." *People v. Moore*, 402 Ill. App. 3d 143, 147 (2005).

¶ 29    After carefully reviewing the record, we find that defendant has failed to present an arguable claim of ineffective assistance of appellate counsel because he was not prejudiced by counsel's failure to challenge the denial of his motion to suppress identification testimony. Stated differently, defendant has not shown that had counsel raised this issue on direct appeal it is arguable that it would have been successful.

¶ 30    Criminal defendants due process rights are violated by identification procedures that are "unnecessarily suggestive" and enable "irreparable mistaken identification." *People v. Jones*, 2017 IL App (1st) 143766, ¶ 27. In order to suppress an identification, a court must find both that: (1) the lineup was unduly suggestive, and (2) the identification was not independently reliable. *People v. Lacy*, 407 Ill. App. 3d 442, 459 (2011). The defendant has the burden to establish the suggestiveness of the lineup and, once that burden is met, the State has the burden to prove the identification was independently reliable. *Id.* A trial court's factual determinations in a motion to suppress hearing will be reviewed for an abuse of discretion. *People v. Faber*, 2012 IL App (1st) 093273, ¶ 50. "However, the ultimate question of whether the trial court erred in denying the motion to suppress is reviewed *de novo*." *Id.*

¶ 31    The law does not require that lineups shown to a witness include near identical physical participants. *People v. Gabriel*, 398 Ill. App. 3d 332, 348 (2010). Indeed, even "substantial differences" in appearance between the defendant and other participants in a lineup do not alone establish that the lineup was unnecessarily suggestive. *People v. Saunders*, 220 Ill. App. 3d 647, 666 (1991). We have found differences in height and size among the participants of the lineup "(if not too great) are of little consequence." *People v. Harrison*, 57 Ill. App. 3d 9, 13 (1978) (affirming a conviction where the victim described offender as being "very tall" and the defendant was tallest

in lineup). We have also held that differences in hair may not lead to an impermissibly suggestive line up. *People v. Love*, 377 Ill. App. 3d 306, 311-12 (2007) (affirming a conviction where defendant was the only one in the lineup with braided hair); see also *People v. Johnson*, 104 Ill. App. 3d 572, 578-79 (1982) (affirming a conviction where the defendant was the only bald and bearded lineup participant). Similarly, where the defendant does not state why different clothes between participants made an identification more likely, we will not find a lineup to be unduly suggestive. *Saunders*, 220 Ill. App. 3d at 666 (affirming a conviction where the defendant was the only one wearing a black shirt).

¶ 32    In this case the minor differences between defendant and the other participants did not create an unduly suggestive line-up. Although not directly at issue, as we noted in our harmless error analysis of defendant' case on direct appeal, "[t]he law does not require that lineups contain identical participants [internal citation], and the relatively minor differences in appearance of which defendant complains do not make the line-up suggestive." *Perez*, 2016 IL App (1st) 131303-U, ¶ 40. Because the line-up was not unduly suggestive, a claim that the trial court erred in denying the motion to suppress would not have been successful. Accordingly, defendant cannot show that he was arguably prejudiced by appellate counsel's failure to raise this issue on direct appeal. See *Papaleo*, 2016 IL App (1st) 150947, ¶ 33 (holding where a claim lacks legal merit, a defendant cannot show that he was arguably prejudiced by failure to raise the claim on appeal).

¶ 33    In rejecting defendant's argument, we briefly address defendant's contention that section 107A-2 of the Code of Criminal Procedure (725 ILCS 5/107A-2 (West 2016)), which provides procedures for administering a lineup, should inform our analysis. Section 107A-2 was not in effect at the time of the lineup, and we will not consider its potential applicability. See *People v.*

*Corral*, 2019 IL App (1st) 171501, ¶ 96 (holding that section 107A-2 did not inform the appellate court's review of a lineup because it was not in effect at the time of the lineup).

¶ 34　Finally, even if appellate counsel could have made a viable argument that the lineup was unduly suggestive, which we do not find, the record contains sufficient evidence that the witnesses identified defendant based on their independent recollection, which permits the State to overcome any possible showing of suggestiveness. *People v. Enis*, 163 Ill. 2d 367, 398-99 (1994) (holding identification testimony is admissible even with suggestive confrontation where the identification is independently reliable); see also *People v. Brooks*, 187 Ill. 2d 91, 129 (1999) (holding that a reviewing court on appeal from a conviction may determine if there is an independent basis identification "where the record permits an informed judgment"). In determining whether a witness's identification is reliable, the court must look to "the opportunity of the witness to view the assailant at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the offender, the level of certainty demonstrated by the witness at the suggestive confrontation, and the length of time between the offense and the suggestive confrontation." *Enis*, 163 Ill. 2d 367 at 398.

¶ 35　Gonzalez and Colon had a significant opportunity to view defendant both in the McDonald's restaurant prior to the robbery, and during the robbery. Defendant stood outside the witnesses' car during the robbery which took place at approximately 10:00 a.m. Gonzalez immediately identified defendant as the robber, and although Colon took longer, neither witness demonstrated uncertainty that defendant was the robber at the identification. Finally, the lineup happened 14 days after the robbery. There was no other testimony or evidence presented which contradicted the witnesses' identification of defendant. Given this record, even if appellate counsel

had claimed that the lineup had been conducted improperly, it was not arguable that the trial court's denial of defendant's motion to suppress would have been reversed on direct appeal given that the identifications had an independent basis in fact.

¶ 36 In sum, we find the circuit court did not err in summarily dismissing defendant's postconviction petition because he failed to present an arguable claim that he was prejudiced by appellate counsel's failure to challenge the denial of his motion to suppress identification testimony on appeal where such a claim lacked any arguable merit. See *People v. Easley*, 192 Ill. 2d 307, 328 (2000) ("[U]nless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal.").

¶ 37 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38 Affirmed.