2023 IL App (1st) 221586
Opinion filed: November 22, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-1586

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 08 CR 11453 |
| | ) | |
| ALFONZO CALDWELL, | ) | Honorable |
| | ) | Adrienne Davis, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion. Justices Martin and Ocasio III concurred in the judgment and opinion.

**OPINION**

¶ 1 A jury convicted defendant, Alfonzo Caldwell, of armed violence predicated on aggravated fleeing or attempting to elude a police officer, aggravated discharge of a firearm, and unlawful use of a weapon by a felon (UUWF). On direct appeal, we affirmed. *People v. Caldwell*, 2013 IL App (1st) 112999-U. Defendant subsequently filed a postconviction petition asserting that his appellate counsel provided ineffective assistance on direct appeal for failing to raise a meritorious issue regarding the insufficiency of the evidence. The postconviction court summarily dismissed defendant's petition at the first stage as frivolous and patently without merit. We reversed and remanded. *People v. Caldwell*, 2017 IL App (1st) 150738-U. The cause proceeded to a third-stage hearing, after which the postconviction court denied defendant's petition, finding no ineffective assistance. The instant appeal is from the denial of his petition. We reverse the order denying

defendant's postconviction petition; reverse his conviction for armed violence; and vacate his sentence for armed violence.

¶ 2 A person commits the offense of armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law that is not excepted by statute. 720 ILCS 5/33A-2(a) (West 2022). In the case at bar, the indictment charged defendant with armed violence for arming himself with a dangerous weapon while committing the felony offense of aggravated fleeing or attempting to elude a police officer (aggravated fleeing). A person commits the offense of aggravated fleeing when he, having been given a visual or audible signal to stop by a peace officer in police uniform, flees from or attempts to elude the officer and drives at a rate of speed at least 21 miles per hour over the speed limit. 625 ILCS 5/11-204(a), 11-204.1(a)(1) (West 2022). Aggravated fleeing is a Class 4 felony. *Id.* § 11-204.1(b). Fleeing or attempting to flee a peace officer under 21 miles per hour is a Class A misdemeanor (*id.* § 11-204(a)) and, thus, may not be used as the predicate crime for an armed violence conviction.

¶ 3 At the jury trial, the evidence established that on May 7, 2008, officers were engaged in a field interview in the area of 454 South Lockwood Avenue when they heard gunshots. Officer John Frano testified that he observed a black sports utility vehicle (SUV) following a white vehicle. The vehicles turned from West Congress Parkway southbound on to South Lockwood Avenue. Officer Frano entered his police vehicle and immediately activated the siren and emergency lights. He then pursued the vehicles as they traveled southbound on Lockwood Avenue and turned westbound on to West Harrison Street. Sergeant Jeff Siwek saw two persons in the white vehicle and two persons in the SUV, and he estimated that the vehicles were traveling 35 miles per hour when they turned onto Lockwood Avenue, which had a speed limit of 30 miles per hour The side streets in the area had a speed limit of 25 miles per hour.

¶ 4    The white vehicle pulled over at the intersection of Lotus Avenue and Harrison Street. The SUV pulled up alongside the white vehicle, and Officer Frano heard gunshots and observed muzzle flashes in the interior of the SUV. The SUV then fled westbound on Harrison Street, turned southbound on to South Central Avenue, and merged on to westbound Interstate 290 with the officers in pursuit. Officer Frano estimated that after the shooting, the SUV was traveling over 50 miles per hour on Harrison Street between Lotus Avenue and Central Avenue, which had a posted speed limit of 30 miles per hour. Upon entering Interstate 290, which had a speed limit of 55 miles per hour, the SUV was traveling about 85 or 90 miles per hour. Officer Frano eventually stopped the SUV, and defendant exited from the driver's side door.

¶ 5    No one testified to seeing defendant throw the gun from the SUV. However, evidence technician Thomas Pierce testified that he recovered a pistol loaded with six live rounds and a piece of a fired bullet from the intersection of Harrison Street and Lotus Avenue. Pierce also recovered a pistol grip to the left of the gun and another pistol grip to the right in the westbound lane near the gutter at 5432 West Harrison Street. He recovered a fired cartridge case on the floor near the driver's seat of the SUV, and he also recovered fired cartridge cases at the 5200 block of West Congress Parkway. Tracy Konior of the Illinois State Police Forensic Science Laboratory testified that the cartridge case found in the SUV had been fired by the gun found at the intersection of Harrison Street and Lotus Avenue. Three additional shell casings and the fired bullet jacket fragment also were fired from the same gun.

¶ 6    The State presented a certified copy of defendant's conviction for possession of a controlled substance to substantiate his UUWF charge.

¶ 7    During closing arguments, defendant argued for acquittal because the gun came from the white vehicle and he never had the gun in his possession. Defendant made no argument that the

State failed to prove his guilt of armed violence because he discarded the weapon prior to committing the predicate felony of aggravated fleeing.

¶ 8 The jury convicted defendant of armed violence, aggravated discharge of a firearm, and UUWF. The trial court sentenced defendant to 15 years' imprisonment on the armed violence count, to run consecutively with two concurrent 6-year terms for the aggravated discharge of a firearm and UUWF.

¶ 9 On direct appeal, defendant challenged his armed violence conviction, arguing that the evidence did not support some of the requisite elements of the predicate offense of aggravated fleeing. Specifically, defendant argued that the evidence failed to show that Officer Frano was in police uniform when he signaled to stop the SUV or that defendant's flight was at a rate of speed at least 21 miles per hour over the speed limit. We affirmed. *Caldwell*, 2013 IL App (1st) 112999-U.

¶ 10 Defendant filed a *pro se* postconviction petition alleging that his appellate counsel (counsel) rendered ineffective assistance on direct appeal for not arguing for reversal of his armed violence conviction based on the evidence showing that he had abandoned the gun before he committed the underlying felony offense of aggravated fleeing. Specifically, Officer Pierce testified the gun was recovered at the scene of the shooting at Harrison Street and Lotus Avenue. Officer Frano testified that defendant reached a speed of at least 21 miles per hour over the speed limit (raising his offense from misdemeanor fleeing to aggravated fleeing) only upon driving away from Harrison Street and Lotus Avenue after the shooting. Defendant contended that his counsel should have argued that the officers' testimony showed he was not guilty of armed violence because by the time he reached a speed of at least 21 miles per hour over the speed limit to qualify as aggravated fleeing, he no longer was armed with the gun. To rightfully convict defendant of

armed violence, the State was required to prove he possessed the gun *while* committing aggravated fleeing.

¶ 11    The postconviction court summarily dismissed defendant's petition. On appeal, we reversed and remanded for second-stage proceedings, finding that defendant had made an arguable claim of ineffectiveness of counsel. *Caldwell*, 2017 IL App (1st) 150738-U.

¶ 12    On remand, defendant filed a supplemental petition again alleging that counsel rendered ineffective assistance on direct appeal for failing to argue for reversal of his armed violence conviction based on his discarding of the gun prior to committing the aggravated fleeing. Defendant attached an affidavit from his appellate counsel stating: "Upon further review and reflection, I should have raised a reasonable doubt issue on direct appeal that the evidence was insufficient to support [defendant's] armed violence conviction because [defendant] did not possess a firearm while he was committing the underlying felony of aggravated fleeing."

¶ 13    The State filed an answer with a general denial, and the case was set for a third-stage evidentiary hearing. At the hearing, counsel testified that, in 2012, he was an experienced appellate attorney who worked at the Office of the State Appellate Defender. Counsel represented defendant in his direct appeal, and he argued those issues that he "thought had the strongest chance of success." Counsel was aware that following the direct appeal, defendant filed a postconviction claim alleging he provided ineffective assistance for failing to argue for reversal of defendant's armed violence conviction based on the lack of any evidence that he possessed the gun at the time of his aggravated fleeing. Counsel also was aware that the appellate court had reversed the first-stage dismissal of the petition and remanded for further proceedings. Counsel testified:

> "Q. In light of that, what is your current position on whether you should have raised this issue?

A. Yes. I should have raised the issue. I mean the appellate court found that it was a viable issue that should have been raised."

¶ 14　The postconviction court denied defendant's petition, noting that counsel's testimony showed that he "put forth those issues that his experience and expertise led him to believe provided [defendant] the best opportunity to succeed." Counsel's representation of defendant on direct appeal was not "lackluster, irresponsible, or unprofessional."

¶ 15　The postconviction court acknowledged defendant's contention that counsel should have argued for reversal of his armed violence conviction based on the evidence showing that when driving away from Officer Frano, he was not armed with a gun at the time he reached a speed of at least 21 miles per hour over the speed limit, *i.e.*, at the time he committed the predicate felony of aggravated fleeing. The court determined, though, that counsel reasonably could have concluded that defendant was engaged in one continuous flight from Officer Frano, and that since defendant reached a speed of 21 miles per hour over the speed limit at some point during that flight, the *entire* flight must be considered an "aggravated fleeing." In other words, counsel could have concluded that the actual timing of defendant's possession of the gun was irrelevant for purposes of his armed violence conviction; as long as he was in possession of the gun at some point during the flight, and as long as he reached a speed 21 miles per hour over the speed limit during the flight (regardless of whether he still had the gun), he was guilty of armed violence. Defendant also was not prejudiced by counsel's alleged ineffectiveness. Even if the issue of defendant's discarding of the gun prior to reaching a speed of 21 miles per hour over the speed limit had been raised on direct appeal, the appellate court still would have affirmed his armed violence conviction on the basis that a rational jury could find he was guilty of armed violence for possessing the gun at some point during the course of the continuous flight. Accordingly, the postconviction court found that

counsel committed no ineffectiveness on direct appeal as his decision not to raise the argument regarding defendant's discarding of the gun prior to reaching a speed of 21 miles per hour over the speed limit was objectively reasonable and not prejudicial.

¶ 16    Defendant filed a motion for reconsideration, which the postconviction court denied. Defendant appeals.

¶ 17    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a three-stage procedure for criminal defendants to raise constitutional issues about their trial or sentencing that could not have been raised on direct appeal. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 17. At the first stage, the postconviction court evaluates the petition and determines whether it is frivolous or patently without merit. *Id.* If the court determines that the petition is not frivolous or patently without merit, it is docketed for second-stage proceedings, during which counsel can be retained or appointed, and defendant must make a substantial showing of a constitutional violation. *Id.* If the petition makes a substantial showing of a constitutional violation, it advances to the third-stage evidentiary hearing, where the court acts as a factfinder, making credibility findings, determining the admissibility of evidence, and weighing the evidence. *People v. Reed*, 2020 IL 124940, ¶ 51; *People v. Velasco*, 2018 IL App (1st) 161683, ¶ 118. Where factfinding and credibility determinations are involved, we review the court's decision for manifest error. *People v. English*, 2013 IL 112890, ¶ 23.

¶ 18    To prevail on a claim of ineffective assistance of counsel, defendant must show that his counsel's performance was objectively unreasonable and that he was prejudiced thereby such that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *People v. Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). The *Strickland* standard applies to claims of

ineffectiveness of appellate counsel. A defendant raising such a claim must show that his appellate counsel's performance was deficient and that there is a reasonable probability that the appeal would have been successful. *People v. Papaleo*, 2016 IL App (1st) 150947, ¶ 21. "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Simms*, 192 Ill. 2d 348, 362 (2000).

¶ 19    Initially, defendant argues that we should apply a *de novo* standard of review to the denial of his petition because no credibility determinations were necessary for the postconviction court to rule on his claim of ineffectiveness of counsel. See *English*, 2013 IL 112890, ¶ 23 (where no credibility determinations are made at the third-stage hearing and the issues presented are pure questions of law, our review is *de novo*). However, review of the record shows that defendant argued his counsel's credibility when he stated that counsel was "honest enough to admit that he made an error." Further, the postconviction court specifically commented on counsel's credibility as a witness. Accordingly, our review is for manifest error. *Id.* However, our result would be the same here even under a *de novo* standard of review.

¶ 20    The State largely adopts the postconviction court's reasoning for why counsel was not ineffective on direct appeal. Specifically, the State contends that counsel reasonably could have determined that defendant's flight from Officer Frano was one continuous act of fleeing and eluding, and that when he reached a speed of 21 miles per hour over the speed limit, the entire flight was converted into the felony offense of "aggravated fleeing." The State contends that such a determination is bolstered by the "one-act, one-crime" doctrine, which prevents multiple convictions resulting from a single act and requires that the lesser act be merged into the greater. *People v. Shines*, 2015 IL App (1st) 121070, ¶¶ 44-45. Here, according to the State, defendant

could not have been convicted of both the lesser, misdemeanor offense of fleeing and the greater, felony offense of aggravated fleeing arising out of the same continuous course of conduct, but only could have been convicted of the greater offense, meaning that the entire flight must be considered one aggravated fleeing. Since defendant was in possession of a gun at some point during the flight, and since the entire flight is considered the felony of aggravated fleeing, he was guilty of armed violence. Accordingly, counsel did not act unreasonably in failing to raise the issue of defendant's discarding of the gun prior to reaching a speed of 21 miles per hour over the speed limit, and the result on appeal would have been the same even if the issue had been raised.

¶ 21    We disagree with the postconviction court's reasoning, which was adopted by the State here, as it relies on an interpretation of the armed violence statute at odds with the clear legislative intent. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Castillo*, 2022 IL 127894, ¶ 24. The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *Id.* A dictionary may be used to determine the plain and ordinary meaning of a statutory term. *Id.*

¶ 22    The armed violence statute specifically states: "A person commits armed violence when, *while* armed with a dangerous weapon, he commits any felony defined by Illinois Law [subject to certain exceptions not applicable here]." (Emphasis added.) 720 ILCS 5/33A-2 (West 2022). The American Heritage College Dictionary defines "while" as "at the same time that." American Heritage College Dictionary (4th ed. 2004). The clear legislative intent, then, is that defendant's armed violence conviction here is sustainable only if he was armed with the gun *at the same time* he was committing the felony of aggravated fleeing by driving away from Officer Frano at 21 miles per hour over the speed limit. See *People v. Brown*, 362 Ill. App. 3d 374, 381 (2005) (affirming defendant's armed violence conviction where he possessed a loaded handgun at the

same time he was fleeing from police at over 21 miles per hour over the speed limit). There is no dispute here that based on the evidence at trial, defendant only was in possession of the gun while fleeing from Officer Frano at a speed less than 21 miles per hour over the speed limit; he discarded his gun prior to reaching a speed of 21 miles per hour over the speed limit, that is, prior to committing the felony offense of aggravated fleeing. As such, defendant was not guilty of armed violence because he was not in possession of a deadly weapon at the same time he was committing the predicate felony.

¶ 23    Counsel's decision on direct appeal not to argue for the reversal of defendant's armed violence conviction based on his discarding of the gun prior to reaching a speed of 21 miles per hour over the speed limit constituted ineffective assistance, as it was objectively unreasonable under the facts of the case and any reasonable interpretation of the armed violence statute. Counsel's failure to raise the issue on direct appeal also was prejudicial because, had the argument been made, only one outcome was reasonably probable: we would have found that even viewing the evidence in the light most favorable to the State, no rational jury could find defendant guilty of armed violence for possessing a gun while committing aggravated fleeing. See *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (discussing the standard of review for a sufficiency of the evidence claim). Therefore, we would have reversed defendant's conviction for armed violence and vacated his sentence.

¶ 24    The State is wrong in arguing that defendant's "single act of fleeing from Officer Frano cannot be compartmentalized into a misdemeanor fleeing and eluding up until the point he discards the handgun and then [turned into] an aggravated fleeing and eluding [only] after he attains speeds of 21 mph over the posted speed limit." Such a compartmentalization is *exactly* what the legislature intended when it specifically defined misdemeanor fleeing from officers as being below speeds of

21 miles per hour over the speed limit and aggravated fleeing as being 21 miles per hour over the speed limit or faster. Under the undisputed facts of this case, defendant only was in possession of the gun while fleeing from Officer Frano at a speed less than 21 miles per hour over the speed limit, *i.e.*, he was in possession of the gun only while committing the misdemeanor offense of fleeing, not while committing the felony offense of aggravated fleeing. However, the armed violence statute requires that defendant be in possession of the gun while he commits a felony. As defendant was not in possession of the gun while committing a felony, his conviction for armed violence cannot stand. Counsel was ineffective for failing to make this argument on direct appeal.

¶ 25    The State argues, though, that counsel cannot be deemed ineffective because the issues he chose to raise on direct appeal involved the exercise of his professional judgment and provided a "thorough review of the evidence of [defendant's] guilt." The State further notes that the right to effective assistance refers to competent, not perfect, representation (*People v. West*, 187 Ill. 2d 418, 432 (1999)) and that errors in judgment or strategy generally do not establish ineffective assistance (see *People v. Hattery*, 109 Ill. 2d 449, 460-61 (1985)).

¶ 26    However, although counsel is not required to brief every conceivable issue on appeal, he renders ineffective assistance where his appraisal of the merits of an issue is patently wrong, such that the raising of the issue would have resulted in a different result on appeal. See *Simms*, 192 Ill. 2d at 362. Counsel candidly admitted in his postconviction affidavit and in his testimony at the evidentiary hearing that his appraisal of the merits of the issue involving defendant's discarding of the weapon prior to reaching a speed of 21 miles per hour over the speed limit was patently wrong. For the reasons already discussed in this opinion, we agree with counsel's postconviction assessment.

¶ 27    The State also argues that because we affirmed defendant's armed violence conviction on direct appeal, we necessarily found that all elements thereof had been proven, including the element that defendant was in possession of the gun while committing the predicate felony of aggravated fleeing; thus, defendant's claim of ineffective assistance based on counsel's failure to raise this issue on direct appeal is without merit as it already has been considered and rejected. We disagree. No argument was made, either at trial or on direct appeal, that defendant was not guilty of armed violence because he possessed the gun only while committing the misdemeanor offense of fleeing from the officer at a rate of speed less than 21 miles per hour over the speed limit, but had discarded the weapon prior to committing aggravated fleeing at a rate of speed 21 miles per hour over the speed limit. Thus, we were never confronted with the issue of whether defendant's discarding of the gun prior to the commission of the aggravated fleeing rendered the finding of guilt for armed violence unsustainable. As already noted, had the issue been raised on direct appeal, we would have reversed defendant's conviction for armed violence and vacated his sentence.

¶ 28    The State also argues that the issue of whether defendant discarded his gun prior to speeding away from Officer Frano at 21 miles per hour over the speed limit is so "novel" that counsel cannot be deemed ineffective for failing to raise it on direct appeal. We disagree. As correctly noted by defendant, this is a simple sufficiency of the evidence issue. There is nothing novel about it.

¶ 29    For all the foregoing reasons, the postconviction court was manifestly erroneous in finding that counsel provided effective assistance on direct appeal when he failed to argue for reversal of defendant's armed violence conviction on the basis that he was not in possession of the gun while he committed the predicate felony of aggravated fleeing. The court also was manifestly erroneous in finding that even if the issue had been raised on direct appeal, the result would have been the

-12-

same because we would have found that a rational jury (viewing the evidence in the light most favorable to the State) still would have convicted defendant of armed violence predicated on aggravated fleeing. To the contrary, on the undisputed facts of this case, a rational jury never could have convicted defendant of armed violence where he was not in possession of the dangerous weapon at the same time as he was committing the predicate felony of aggravated fleeing. Simply put, the State did not prove defendant guilty of armed violence beyond a reasonable doubt.

¶ 30    Therefore, we reverse the denial of defendant's postconviction petition. Pursuant to our authority under Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), we reverse defendant's conviction for armed violence predicated on aggravated fleeing and vacate his sentence thereon.

¶ 31    Reversed in part and vacated in part.

---

*People v. Caldwell*, **2023 IL App (1st) 221586**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 08-CR-11453; the Hon. Adrienne Davis, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Adrienne E. Sloan, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Tasha-Marie Kelly, and Sarah L. Simpson, Assistant State's Attorneys, of counsel), for the People. |

---