2020 IL App (1st) 172464-U

Order filed: May 29, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-17-2464

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 26918 |
| | ) | |
| MICHAEL MERRIWEATHER, | ) | Honorable |
| | ) | Darron Edward Bowden, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1     *Held*: First-stage dismissal of defendant's postconviction petition is reversed, where defendant's assertion—that a natural life sentence imposed upon him for crimes committed when he was 21-years-old violated the proportionate penalties clause—was not frivolous or patently without merit.

¶ 2     Defendant-appellant, Michael Merriweather, pleaded guilty to—*inter alia*—two counts of first degree murder, and was sentenced to a term of natural life in prison for those convictions. He did not file a direct appeal, but rather filed a postconviction petition asserting—*inter alia*—that his life sentence—imposed for crimes he committed when he was 21 years old—violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, Art. I, § 11). For the following reasons, we reverse and remand for further proceedings.

¶ 3    On January 8, 2002, defendant pleaded guilty to two counts of first degree murder, one count of attempted first degree murder, and two counts of armed robbery in exchange for receiving a sentence of natural life without the possibility of parole for the murder convictions, which would be served concurrently with 30-year sentences on each of the other three convictions. The State originally sought the death penalty for defendant, but dropped that demand as part of the plea agreement.

¶ 4    The factual basis provided to the trial court in connection with the plea came in the form of a written stipulation signed by defendant. Therein, defendant admitted to participating in the armed robbery of a gun shop in 1998, during which defendant and others shot three men, killing two. It was also stipulated that defendant was 21 years old at the time of the robbery.

¶ 5    After the trial court accepted the factual basis for the plea, defendant waived his right to a presentence investigation report (PSI). The trial court also explained to defendant, and defendant indicated he understood, that the only sentencing options available to the trial court for the murder convictions were the imposition of the death penalty or a term of natural life without the possibility of parole. The State offered no evidence in aggravation, while defense counsel indicated that there were two statutory mitigating factors: (1) defendant's lack of prior criminal history, and (2) defendant's completion of a Jobs Corps training program and his prior work history, indicating the possibility for rehabilitation.

¶ 6    After again noting that it had no statutory discretion to reduce defendant's sentence further, the trial court sentenced defendant in conformity with the plea agreement to a sentence of natural life without the possibility of parole for the murder convictions, to be served concurrently with 30-year sentences on the other three convictions. Defendant did not file a direct appeal.

¶ 7    On June 22, 2017, defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1, *et. seq.* (West 2016)) raising several claims. Among them was an assertion that, as applied to him, it was a violation of the proportionate penalties clause of the Illinois Constitution to impose a statutorily-mandated minimum natural life sentence for crimes he committed when he was 21 years old. In support of this argument, defendant's petition attached several articles discussing how human brains are not fully mature immediately upon a person turning 18 years of age, and also included information regarding his abusive childhood and troubled young adulthood, spent living in a Chicago public-housing project rife with gang activity.

¶ 8    Specifically, defendant outlined in great detail numerous scientific studies concluding that the minds of those 18 to 24 years of age are still developing, with such young adults being highly subject to peer influence and subject to exhibit poor decision-making in highly volatile situations. He also extensively detailed his childhood and young-adult history of poverty, homelessness, abuse at the hands of his mother and siblings, witnessing multiple murders as well as three suicide attempts by his mother, and being subject to multiple gang beatings. Despite this history, defendant also detailed his efforts to obtain an education, avoid joining a gang, and find employment. Defendant asserted that it was only pressure from a gang to which he owed money, due to a loss of employment, that caused him to agree to participate in the armed robbery. Finally, defendant directly tied this history to the neurological research cited in his petition, both to explain his poor decision-making in agreeing to participate in the armed robbery and to show his capacity for rehabilitation.

¶ 9     On July 7, 2017, the trial court entered a brief order on the docket sheet summarily dismissing defendant's postconviction petition, stating "previous order to stand case failed stage 1 of PC." Defendant now appeals.

¶ 10     On appeal, defendant contends that the trial court erred in dismissing his petition at the first stage because—*inter alia*—he sufficiently stated an as-applied challenge to his sentence under the proportionate penalties clause of the Illinois Constitution. We agree.

¶ 11     The Act "provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated at trial or sentencing." *People v. Dupree*, 2018 IL 122307, ¶ 28. At the first stage of a postconviction proceeding, the trial court independently reviews the defendant's petition, taking the allegations as true, and determines if it is frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). If the petition is not dismissed at the first stage it advances to the second stage. 725 ILCS 5/122-5 (West 2016). At the second stage, the defendant must make a substantial showing of a deprivation of constitutional rights or the petition is dismissed. *Dupree*, 2018 IL 122307, ¶ 28. If such a showing is made, the postconviction petition advances to the third stage where the court conducts an evidentiary hearing. 725 ILCS 5/122–6 (West 2016).

¶ 12     A petition is frivolous or patently without merit if it " 'has no arguable basis *** in law or in fact.' " *People v. Papaleo*, 2016 IL App (1st) 150947, ¶ 19 (quoting *Hodges*, 234 Ill. 2d 1, 11–12 (2009)). A petition has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or a fanciful factual allegation. *Hodges,* 234 Ill. 2d at 16. "A legal theory is 'indisputably meritless' if it is 'completely contradicted by the record,' and a factual allegation is 'fanciful' if it is 'fantastic or delusional.' " *Papaleo*, 2016 IL App (1st) 150947, ¶ 19 (quoting

*Hodges*, 234 Ill. 2d at 16–17(2009)). We review the first-stage dismissal of a postconviction petition *de novo*. *People v. Williams*, 2015 IL App (1st) 131359, ¶ 28.

¶ 13    In *Roper v. Simmons*, 543 U.S. 551, 574-75 (2005), the Supreme Court found that the death penalty was unconstitutional as applied to minors. In *Graham v. Florida*, 560 U.S. 48 (2010), the Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." *Id*. at 82. Then, in *Miller v. Alabama*, 567 U.S. 460, 479 (2012), the Supreme Court concluded that the eighth amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" convicted of homicide. In each case, the Supreme Court relied in part on the lesser moral culpability and greater rehabilitative potential of minors in support of its decisions, and "it is clear the United States Supreme Court in *Roper*, *Graham*, and *Miller* has provided juveniles with more constitutional protection than adults." *People v. Pacheco*, 2013 IL App (4th) 110409, ¶ 68.

¶ 14    However, *Miller* itself did not impose an outright ban on the imposition of a life sentence upon a juvenile convicted of homicide, let alone a ban on lengthy term-of-years sentences imposed upon juveniles. See, *Miller*, 567 U.S. 479-80 (refusing to completely foreclose the possibility that a life sentence could be constitutionally imposed upon a juvenile convicted of homicide). Rather, the Supreme Court held only that such a sentence could not be *mandated*, and that before a life sentence could be properly imposed, "mitigating circumstances" such as "an offender's youth and attendant characteristics" must be considered. *Id*. at 483, 489.

¶ 15    The Illinois Supreme Court has ruled that *Miller* applies to discretionary, as well as mandatory life sentences (*People v. Holman*, 2017 IL 120655, ¶ 40), and also to *de facto* life sentences, or sentences "that cannot be served in one lifetime" and have "the same practical effect

on a juvenile defendant's life as would an actual mandatory sentence of life without parole" (*People v. Reyes*, 2016 IL 119271, ¶¶ 9-10).

¶ 16    Thus, while a juvenile offender may be sentenced to a natural life or *de facto* sentence of life imprisonment, before doing so the trial court must:

> "[D]etermine[ ] that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. The court may make that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46;

¶ 17    Obviously, a number of these decisions involved analysis of the protections provided by the eighth amendment, while here we address defendant's as-applied challenge brought pursuant to the proportionate penalties clause of the Illinois Constitution. However, as our supreme court has indicated, the proportionate penalties clause provides "a limitation on penalties beyond those afforded by the eighth amendment." *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 69.

¶ 18    Furthermore, defendant—aged 21 at the time of the crimes to which he plead guilty—was not a "juvenile" offender. "Because defendant was an adult, *Miller* [and its progeny] does not apply

directly to his circumstances." *People v. Harris*, 2018 IL 121932, ¶ 45.

¶ 19    Nevertheless, our supreme court specifically considered *Miller's* applicability to a young adult defendant in both *People v. Thompson*, 2015 IL 118151, and *Harris*, 2018 IL 121932. It is true that, in neither case did our supreme court expressly accept the premise that the protections provided to juvenile offenders by *Miller* and its progeny should be extended to young adult offenders; however, the court did not explicitly reject that assertion either. Moreover, in both cases our supreme very explicitly *did* indicate that a postconviction proceeding would be an appropriate venue to address that very issue. *Thompson*, 2015 IL 118151, ¶ 44; *Harris*, 2018 IL 121932, ¶ 48.

¶ 20    More recently, another panel of this court concluded that a postconviction petition was improperly dismissed at the first stage, and explicitly concluded that a mandatory natural life sentence violated the proportionate penalties clause as applied to a defendant who was 19 years old at the time he committed murder, pursuant to *Miller* and its progeny. *People v. House*, 2019 IL App (1st) 110580-B, ¶ 65, *appeal allowed,* 140 N.E. 3d 231 (Ill. 2020).

¶ 21    We find that the allegations underlying defendant's as-applied proportionate penalties claim was sufficient under *Thompson*, *Harris*, and *House* to avoid summary dismissal at the first-stage for being frivolous or patently without merit. Considering these three decisions as well as the detailed factual allegations contained in the petition, we find that defendant's as-applied challenge was not based upon an indisputably meritless legal theory or fanciful factual allegations.

¶ 22    In reaching this conclusion we note that the first stage in the proceeding allows the trial court " 'to act strictly in an administrative capacity by screening out those petitions which are without legal substance or are obviously without merit.' [Citation.] Because most petitions are drafted at this stage by defendants with little legal knowledge or training, this court views the threshold for survival as low." *People v. Tate*, 2012 IL 112214, ¶ 9.

¶ 23    We also acknowledge that on appeal the State raised a number of merit-based arguments against such a conclusion, specifically asserting that "[w]hile the Illinois Supreme Court may appear to recognize the possibility that an 18 or 19-year old youthful offender may be able to claim *Miller's* protections under certain circumstances, those decisions do not support extension of *Miller* to offenders 21 years and older," and that, in any case, defendant's petition was not supported by sufficient facts. However, we find these arguments to be "more appropriate to the second stage of postconviction proceedings, where both parties are represented by counsel, and where the petitioner's burden is to make a substantial showing of a constitutional violation." *Tate*, 2012 IL 112214, ¶ 22.

¶ 24    In reaching this conclusion, we also necessarily reject the State's contention that defendant waived this issue by entering a guilty plea. The State argues that by accepting the plea agreement and waiving his right to a PSI, the petitioner voluntarily, intelligently and knowingly waived any consideration of his youth and attendant characteristics in his sentencing.

¶ 25    It is true that "a voluntary guilty plea waives all non-jurisdictional errors or irregularities, including constitutional ones." *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). However, in determining whether a legal claim has been waived, courts should examine the particular facts and circumstances of a case, and any principles of waiver should be construed liberally in favor of the defendant. *People v. Phipps*, 238 Ill. 2d 54, 62 (2010). Furthermore, waivers of constitutional rights " 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' [Citation.] Thus, a guilty plea does not waive a contention that the plea itself was involuntary because of faulty admonishments. [Citations.] Moreover, such claims may be raised for the first time in a postconviction petition." *People v. Stroud*, 208 Ill. 2d 398, 403 (2004).

¶ 26　Moreover, this court recently held that where a defendant's constitutional claim does not contradict the terms of his indictment or his plea agreement and does not focus upon case-related constitutional defects that occurred prior to the entry of his guilty plea, the defendant does not waive his constitutional claim by voluntarily pleading guilty. *People v. Patterson*, 2018 IL App (1st) 160610, ¶ 21.

¶ 27　Here, defendant does not raise a challenge based upon any case-related constitutional defects that occurred prior to the entry of his guilty plea, nor does it contradict the terms of his indictment or the admissions he made in his plea agreement. Pursuant to *Patterson*, it is was therefore not waived. In addition, by raising a novel constitutional claim based upon case law unavailable to him at the time of his plea of guilty, we find that defendant is essentially contending that his plea was not truly voluntary and knowing as he was allegedly not properly admonished about the constitutionally appropriate sentencing range he faced in light of *Miller* and its progeny. Without such a voluntary and knowing plea and waiver, we find that defendant's as-applied challenge under the proportionate penalties clause was not waived.

¶ 28　In light of our finding that at least one of defendant's postconviction claims has arguable merit, the entire petition must be remanded for second-stage proceedings. See *People v. Cathey*, 2012 IL 111746, ¶ 34 (partial summary dismissals not permitted under the Act, and entire petition must be remanded for second-stage proceedings if petition sets forth a single claim survives summary dismissal).

¶ 29　Finally, we note that our finding in no way expresses an opinion on the ultimate merits of the assertions contained in defendant's postconviction petition, or on whether defendant will ultimately prevail on his postconviction claims. See *Hodges*, 234 Ill. 2d at 22.

¶ 30    For the foregoing reasons, we reverse the dismissal of defendant's postconviction petition and remand for second-stage proceedings.

¶ 31    Reversed and remanded.