2024 IL App (1st) 221719-U
No. 1-22-1719
Order filed July 3, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 98 CR 26918 |
| | ) | |
| MICHAEL MERRIWEATHER, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the dismissal of defendant's postconviction petition at the second stage of proceedings where the record showed that postconviction counsel provided reasonable assistance.

¶ 2    Defendant Michael Merriweather appeals the dismissal of his petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) at the second stage of proceedings. On appeal, he asserts that his appointed postconviction counsel provided unreasonable assistance and violated Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) by failing to shape his proportionate penalties claim to be legally cognizable, supplement

the claim with evidentiary support, and respond to the State's motion and arguments to dismiss the petition. We affirm.

¶ 3    Defendant was charged by indictment with multiple counts of first degree murder, attempted first degree murder, aggravated battery, aggravated battery with a firearm, and armed robbery.

¶ 4    On January 8, 2002, defendant agreed to plead guilty to four counts of first degree murder, one count of attempted first degree murder, and two counts of armed robbery in exchange for natural life in prison on the murder charges, to be served concurrently to 30 years in prison on each of the attempted murder and armed robbery charges.

¶ 5    The stipulated factual basis established that on September 17, 1998, defendant, who was 21 years old, his brother Kendall Merriweather (Kendall), and Kenneth Bryant drove to a gun shop in Glenwood to observe it before carrying out an armed robbery there the next day.[1] On September 18, 1998, defendant drove to the gun shop with Rashe Poplar in the passenger's seat, and Bryant drove separately with Kendall in his passenger's seat. Defendant and Kendall entered the gun shop with handguns, accompanied by Bryant. Three people were present in the shop. Kendall shot one person in the head. Defendant discharged multiple gunshots at the other two people, shooting one in the head and the other in the neck. Kendall gave Bryant a handgun and instructed Bryant to "finish off" the surviving victims. As the victims lay on the floor, Bryant shot one in the chest and another in the abdomen. Defendant, Kendall, and Bryant then took handguns, rifles, bullets, and other firearm accessories from the shop, placed them in the vehicles, and drove away with Poplar.

---

[1] Because defendant and Kendall Merriweather share the same last name, we refer to Kendall by his first name.

Two of the three victims died from their injuries. A witness overheard the four offenders discussing the shootings and armed robbery. Police recovered multiple firearms, and the surviving victim identified defendant in a photo array as a shooter. After his arrest, defendant confessed in a written statement to the two murders, attempted murder of the surviving employee, and the armed robbery of the gun shop. He also disclosed the involvement of Kendall, Bryant, and Poplar.

¶ 6      The court accepted defendant's plea and proceeded to sentencing. Defendant confirmed that he wished to waive a presentence investigation report, which would have included his life history, criminal record, and educational and social background. The State presented no factors in aggravation and stood on its recommended sentence of natural life on the first degree murder counts and current terms of 30 years each on the remaining counts. Defendant argued in mitigation that he had rehabilitative potential because he had no criminal history, had completed Job Corps training, attempted to "keep himself employed," and completed his education "up to the point that he did."

¶ 7      The court merged the four first degree murder counts into two counts, one for each victim, and imposed the agreed upon sentence. The court stated that defendant and his "confederates" committed "the most despicable crime that can be committed," and "[t]he punishment fits the crime."

¶ 8      Defendant did not file a motion to withdraw his guilty plea or a direct appeal.

¶ 9      On June 22, 2017, defendant filed a 52-page *pro se* postconviction petition, alleging in relevant part that, because he was 21 years old when the charged offenses occurred, his natural life sentence was unconstitutional as it violated the 8th and 14th amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and the proportionate penalties clause of the Illinois

Constitution (Ill. Const. 1970, art. 1, § 11) as applied to him. He contended that, while the law considered him an adult at age 18, that number was "arbitrary" and not based on scientific evidence. Defendant asserted that neuroscience established that a 21-year-old person did not have the mind of a fully mature adult, describing scientific evidence regarding the brain development of young adults. Defendant argued that, in light of this scientific evidence, he should have been sentenced as a juvenile and given the same treatment and considerations juveniles receive when facing a mandatory natural life sentence, as outlined in *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. However, he claimed, because he pled guilty, the trial court was never able to consider his youth, upbringing, or rehabilitative potential.

¶ 10    Defendant further argued that his sentence violated the proportionate penalties clause as applied to him given his childhood, which consisted of "constant neglect, and incident after incident of child endangerment." Defendant's mother had been investigated twice for the deaths of two of her children, and she grew violent and suicidal over time, beating defendant with an extension cord and attempting suicide in front of defendant three times. Defendant's father was "out of the picture." His brother and his friend would throw defendant into an elevator shaft, and his sister would make him stand and sit in "strange positions" and hit him. Outside of the home, defendant witnessed multiple people get shot, and murder was "an every other day occurrence." He also had multiple close friends die of diseases.

¶ 11    After defendant's mother passed away, he was moved away from Chicago and became homeless at 14 years old. He eventually moved back to Chicago to live with his sister in a Chicago neighborhood with a "gang infestation." As her home lacked space, defendant lived in a closet for two years. On multiple occasions, he was "beat up, bullied, and shot at." At age 16, he left school

and enrolled in a Job Corp program after a gang threatened his life. Defendant worked multiple jobs but found it difficult to find work after a company overpaid him but accused him of theft. He was forced to borrow money from a gang member but was unable to pay the gang member back, so he stole a firearm from the gun shop. The gang member then learned about the robbery and demanded that defendant rob the gun shop again, which led to the instant case.

¶ 12     Defendant asserted he "wasn't a monster who was engaged in criminal activity his whole life," and he had "tried his hardest to be a law abiding citizen his entire upbringing" but "failed in the end." He accepted responsibility for his actions and "never once lifted a finger to file a postconviction [petition] until 19 years later," when he came across "newly discovered research in neuroscience" that gave him insight into "what he actually endured at such a young age."

¶ 13     Defendant attached his affidavit stating that the allegations in his petition were true and correct to the best of his knowledge and belief. He also attached articles describing the advances in neuroscience regarding brain development and their implication in criminal cases involving young adult offenders.

¶ 14     On July 7, 2017, the circuit court summarily dismissed defendant's petition.

¶ 15     We reversed and remanded for second stage postconviction proceedings. *People v. Merriweather*, 2020 IL App (1st) 172464-U, ¶¶ 28, 30. We found that defendant's claim was not waived as he neither raised a challenge based upon any case-related constitutional defects that occurred prior to the entry of his guilty plea nor contradicted the terms of his indictment or the admissions he made in his plea agreement. *Id.* ¶ 27. We further found that, by raising a novel constitutional claim based upon case law unavailable to him at the time of his plea of guilty, defendant was "essentially contending that his plea was not truly voluntary and knowing as he was

allegedly not properly admonished about the constitutionally appropriate sentencing range he faced in light of *Miller* and its progeny." *Id.* We therefore concluded that, "[w]ithout such a voluntary and knowing plea and waiver," defendant's as-applied challenge under the proportionate penalties clause was not waived. *Id.*

¶ 16    On remand, the circuit court advanced the postconviction petition to second-stage proceedings and appointed defendant counsel.

¶ 17    On October 22, 2021, postconviction counsel filed a signed certificate pursuant to Rule 651(c), certifying the following:

> "1. I have consulted with [defendant], personally or by letter to ascertain his contentions of deprivations of constitutional rights;
>
> 2. I have reviewed the trial file[;]
>
> 3. I have obtained and examined the plea transcript and sentencing in this case;
>
> 4. I have not filed an Amended Petition for Post-Conviction Relief. The pro se successive petition for post-conviction relief does adequately set forth the [defendant's] claims of deprivation of his constitutional rights."

¶ 18    On October 29, 2021, the State filed a motion to dismiss defendant's postconviction petition, which the State noted was an initial postconviction petition. The State argued that the eighth amendment protections for juveniles described in *Miller* did not apply to defendant because he was over the age of 18 years old at the time of the offense. The State maintained that at the time of the offense, defendant was 21 years, 2 months, and 25 days old. As to defendant's as-applied challenge under the proportionate penalties clause, the State asserted there was no showing how the sentence as applied to defendant violated the clause as defendant was an active participant in

the offenses, and there was nothing that would give the court "pause" to believe that defendant's actions were those of a youthful offender. The State also noted that plea counsel argued in mitigation that defendant had a potential for rehabilitation.

¶ 19    During a hearing on January 7, 2022, defendant's postconviction counsel informed the court that counsel was reviewing the State's motion to dismiss and possibly would file a response.

¶ 20    On March 18, 2022, defendant's postconviction counsel told the court that defendant was not going to respond to the motion to dismiss.

¶ 21    The court held a hearing on the motion to dismiss on July 29, 2022. Defendant's postconviction counsel stated that she was "[j]ust making arguments that prepare for appeal and possible future ruling," "in case [the] law change[s]." She argued that defendant was "rather young," as he was 21 years old, and "[o]ne of the younger participants in this allegation." Counsel stated that the natural life sentence "for someone of such a younger age is such a heavy burden to bear," and defendant was "looking for some type of relief from this sentence" and a new sentencing hearing.

¶ 22    The State replied that defendant was the oldest offender in the case and a "full-on adult."

¶ 23    On October 21, 2022, the circuit court granted the State's motion to dismiss the postconviction petition. The court found that defendant could not claim any eighth amendment violations as described in *Miller* because he was a 21-year-old offender and agreed to be sentenced to a term of natural life pursuant to a negotiated plea. The court also found there was no proportionate penalties clause violation because the case was a "brutal murder case" in which defendant was an active participant. It found that the sentencing judge adequately addressed the factors in aggravation and mitigation, including defendant's youth and lack of criminal

background. The court noted that defendant was not a juvenile and was "the oldest defendant" in the case.

¶ 24    On appeal, defendant argues that his postconviction counsel provided unreasonable assistance under Rule 651(c), as counsel: failed to amend his proportionate penalties claim with appropriate legal arguments and supporting documents; failed to file a response to the State's motion to dismiss or present an adequate argument at the hearing on the motion; misunderstood his postconviction petition to be a successive petition; and effectively abandoned his claim.

¶ 25    The Act provides a three-stage method for criminal defendants to challenge their convictions or sentences for violation of federal or state constitutional rights. *People v. Knapp*, 2020 IL 124992, ¶ 43. Defendant's petition was dismissed at the second stage of proceedings, where counsel may be appointed to represent the defendant and the State may file responsive pleadings. *People v. House*, 2021 IL 125124, ¶ 17. At the second stage, if the State files a motion to dismiss the petition, the circuit court must decide whether to grant the State's motion or advance the petition to the third stage for an evidentiary hearing. *People v. Dupree*, 2018 IL 122307, ¶ 28.

¶ 26    When reviewing a motion to dismiss at the second stage, "we accept as true all factual allegations that are not positively rebutted by the record." *People v. Johnson*, 2017 IL 120310, ¶ 14. A petitioner is only entitled to a third-stage evidentiary hearing where "the allegations in the petition supported by affidavits, records, or other evidence [citation] make a substantial showing" of a deprivation of constitutional rights. (Internal quotation marks omitted.) *Dupree*, 2018 IL 122307, ¶ 28. We review *de novo* the second-stage dismissal of a postconviction petition. *Johnson*, 2017 IL 120310, ¶ 14.

¶ 27  In postconviction proceedings, there is no constitutional right to the assistance of counsel, and the right to counsel is "a matter of legislative grace." (Internal quotation marks omitted.) *People v. Addison*, 2023 IL 127119, ¶ 19. "[A] postconviction petitioner is entitled only to the level of assistance granted by the Act," which our supreme court has labeled "a reasonable level of assistance." (Internal quotation marks omitted.) *Id.* This standard is "significantly lower than the one mandated at trial by our state and federal constitutions." (Internal quotation marks omitted.) *People v. Huff*, 2024 IL 128492, ¶ 21. Postconviction counsel is appointed "not to protect postconviction petitioners from the prosecutorial forces of the State but to shape their complaints into the proper legal form and to present those complaints to the court." *Addison*, 2023 IL 127119, ¶ 19.

¶ 28  To ensure that postconviction petitioners receive a reasonable level of assistance, Rule 651(c) outlines postconviction counsel's duties. *People v. Custer*, 2019 IL 123339, ¶ 32. Rule 651 "sharply limits the requisite duties of postconviction counsel." *Id.* Counsel need only certify that they have (1) consulted with the defendant by phone, mail or other means, (2) examined the record as needed to shape the defendant's *pro se* claims, and (3) made any amendments to the *pro se* petitions that are necessary for an adequate presentation of those claims. *Id.* "Substantial compliance with Rule 651(c) is sufficient." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18.

¶ 29  Postconviction counsel's filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *Id.* ¶ 19. The defendant bears the burden of overcoming that presumption by showing postconviction counsel did not substantially comply with the strictures of the rule. *Addison*, 2023 IL 127119, ¶ 21. The defendant may do so by, "*inter alia*, demonstrating that postconviction counsel did not make all necessary

amendments to the *pro se* petition." *Id.* When fulfilling that third duty under Rule 651(c), postconviction counsel is not required to "amend a petition to advance frivolous or spurious claims on a defendant's behalf." *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 30. Thus, where the presumption of reasonable assistance is present, "the question of whether the *pro se* allegations had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition." (Internal quotation marks omitted.) *Id.* We review a counsel's substantial compliance with Rule 651(c)'s requirements *de novo*. *People v. Smith*, 2020 IL App (1st) 181220, ¶ 13. If counsel failed to substantially comply with Rule 651(c), we must remand without addressing the petition's claims on the merits. *Addison*, 2023 IL 127119, ¶ 33.

¶ 30    Here, postconviction counsel filed a Rule 651(c) certificate stating that she consulted with defendant, reviewed the trial file and transcripts of the plea and sentencing proceedings, and concluded that no amendments were necessary to adequately present defendant's claims of deprivation of constitutional rights. The certificate substantially tracked the express requirements set forth in Rule 651(c). As defendant points out, counsel mislabeled defendant's filing as a "successive" postconviction petition in her certificate. However, there is no indication in the record that counsel considered the merits of defendant's claim according to the higher standard applicable to successive postconviction petitions or otherwise failed to properly review the case. Rather, the State's motion to dismiss and the report of proceedings reflect that the parties and circuit court correctly understood defendant's petition to be an initial petition in second-stage proceedings. In addition to the certificate, the record shows that postconviction counsel informed the court that counsel was reviewing the State's motion to dismiss, and ultimately determined that a response was not warranted.

¶ 31    Thus, on this record, we find postconviction counsel's certificate substantially complied with Rule 651(c), notwithstanding postconviction counsel's apparent clerical error in her Rule 651(c) certificate. We therefore presume that postconviction counsel provided reasonable assistance. See *People v. Collins*, 2021 IL App (1st) 170597, ¶¶ 33-34 (postconviction counsel's misstatement that counsel examined the "Report of Proceedings," and not the record as a whole, in the Rule 651(c) certificate did not overcome the presumption that counsel substantially complied with Rule 651(c), as counsel made no errors or misstatements in court).

¶ 32    Defendant fails to rebut the presumption that postconviction counsel provided reasonable assistance. Defendant contends that counsel failed to shape his proportionate penalties claim into proper legal form and, instead, stood on his initial *pro se* filing. However, defendant fails to specifically identify what information, argument, or authority postconviction counsel could have added to the petition to reshape his proportionate penalties claim, particularly where defendant's *pro se* petition already provided an abundance of factual allegations regarding his youth and upbringing, supporting case law, and exhibits regarding brain development in young adults.

¶ 33    Further, defendant does not demonstrate that an amendment or response to the State's motion seeking to dismiss his proportionate penalties claim was necessary. In his postconviction petition, defendant alleged that his natural life sentence violated the proportionate penalties clause as he was an emerging adult of 21 years old when he committed the underlying offenses. He claimed that the sentencing court was never given the opportunity to consider his youth and its attendant circumstances before imposing a natural life sentence because defendant pled guilty. In support of his claim, as noted, defendant detailed a long account of his childhood, the abuse he suffered from family and peers, and the presence of gang activity throughout his life.

¶ 34 The proportionate penalties clause of the Illinois Constitution provides that all penalties "be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the proportionate penalties clause where it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." (Internal quotation marks omitted.) *People v. Clark*, 2023 IL 127273, ¶ 51.

¶ 35 In *Miller v. Alabama*, 567 U.S. 460 (2012), the United States Supreme Court held that the eighth amendment (U.S. Const., amend. VIII) prohibits the mandatory sentencing of a juvenile to life in prison without parole, and requires that a sentencing court have discretion to consider a juvenile's youth and its attendant circumstances when sentencing a juvenile. The Illinois Supreme Court held that the eighth amendment protections in *Miller* applies to *de facto* life sentences of more than 40 years (*People v. Buffer*, 2019 IL 122327, ¶¶ 27, 40), but has "repeatedly rejected" claims seeking to extend *Miller* to offenders 18 years of age or older (*People v. Harris*, 2018 IL 121932, ¶¶ 60-61).

¶ 36 Our supreme court has also found that the proportionate penalties clause is not synonymous with, and provides broader protections than, the eighth amendment, as the clause focuses on the objective of rehabilitation, whereas the eighth amendment does not. *People v. Clemons*, 2012 IL 107821, ¶¶ 39-40. Our supreme court has not foreclosed the possibility of 18- or 19-year-old offenders raising challenges to their sentences under the proportionate penalties clause based on a *Miller*-type analysis. See *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44. But the reasoning in *Miller* "does not apply to discretionary life sentences under proportionate penalties clause standards where the circuit court does consider all relevant mitigating factors at sentencing and the

circuit court's exercise of discretion is supported by the evidence in the record." (Internal quotation marks omitted.) *Clark*, 2023 IL 127273, ¶ 72.

¶ 37 However, this court has observed that "the line of adulthood has been drawn at age 21," and we have generally rejected a *Miller*-type claim under the proportionate penalties clause where, as here, the defendant was over the age of 21. *People v. Green*, 2022 IL App (1st) 200749, ¶¶ 36-44 (collecting cases). Also significant is the fact that defendant pled guilty under a fully negotiated plea. Subsequent to this court's remand directing second stage proceedings in defendant's case, our supreme court in *People v. Jones*, 2021 IL 126432, ¶ 20, reiterated that "a voluntary guilty plea waives all non-jurisdictional errors or irregularities, including constitutional ones." (Emphasis and internal quotation marks omitted.) The *Jones* court explained that a defendant who pleads guilty cannot later raise a *Miller*-type claim for that reason, and because the court, in being able to accept or reject the plea agreement, was able to exercise discretion in entering the final sentence. *Id.* ¶¶ 26-27. Thus, under *Jones*, defendant's plea waived the proportionate sentencing claim he raised in his postconviction petition.

¶ 38 Our supreme court recently noted in *Huff* that where postconviction counsel files a Rule 651(c) certificate, "[i]t is presumed from the lack of an amendment [to a postconviction petition] that there were none to be made." *Huff*, 2024 IL 128492, ¶ 24. In light of *Huff*, we may presume that there were no amendments to be made to defendant's petition to properly present his claim or respond to the State's motion to dismiss, where defendant was 21 years old at the time of the offenses and pleaded guilty pursuant to a negotiated plea, and his postconviction petition set out his proportionate penalties claim carefully and in great detail. See *id.* Thus, defendant has failed to rebut the presumption that postconviction counsel substantially complied with Rule 651(c) and

provided reasonable assistance, where counsel submitted a facially valid Rule 651(c) certificate. See *Addison*, 2023 IL 127119, ¶ 21 (the defendant bears the burden of overcoming that presumption by showing postconviction counsel did not substantially comply with the strictures of Rule 651(c)).

¶ 39    Defendant also asserts that, if postconviction counsel believed his claim was meritless, counsel was required to withdraw. Indeed, our supreme court has noted that, "[i]f appointed counsel *knows* that the contentions are patently without merit or wholly frivolous, counsel has an ethical duty to not needlessly consum[e] the time and energies of the court and the State by advancing frivolous arguments." (Emphasis in original and internal quotation marks omitted.) *Huff*, 2024 IL 128492, ¶ 28.

¶ 40    However, the record reflects that, while counsel was aware the law did not favor defendant's sentencing claim, counsel was also aware that this area of law has been further developed and clarified in recent years. Thus, counsel stood on defendant's claim to preserve it, should the law change to favor defendant's claim. There is nothing suggesting postconviction counsel knew defendant's petition was frivolous or patently without merit, nor did counsel abandon defendant's proportionate penalties claim, particularly where the law could further develop to favor defendant. See *id.* ¶ 29. This was not a situation where postconviction counsel "confessed to the motion to dismiss or informed the court that petitioner's contentions had no merit." See *id.* ¶ 31. As such, we do not find that postconviction counsel was required to withdraw from representing defendant.

¶ 41    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 42    Affirmed.